## John Niccolls *et al.*

### *v.*

## Oramel Rugg *et al.*

1. Religious corporations—*on separation—rights of majority and minority stated.* In case of a division of a religious corporation, both parties still adhering to the tenets and discipline of the organization, the property should be divided between them in proportion to their numbers at the time of such separation.

2. Former decisions. The rule adopted in the case of *Ferraria* v. *Vasconcellos*, 31 Ill. 25, applicable to this case.

3. Religious corporations—*right of voting—should not be confined to members.* Upon questions affecting the property of a religious corporation, the right to

vote thereon should not be confined to persons only who are members of the church. Those who have contributed to its support, although not members, should be allowed a voice in such matters.

4. SAME—*partition of the property—how effected.* In making partition of the property of a religious corporation, in case of a division, mathematical nicety is neither attainable nor important. The only satisfactory mode would be, to count church members by virtue of their membership, and in addition, to count as members of the congregation, all pew-holders.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

The opinion states the case.

Mr. R. E. WILLIAMS, and Messrs. SPENCER & EWING, for the appellants.

Messrs. TIPTON & BENJAMIN and Mr. W. H. HANNA, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery, filed in behalf of the minority of a religious society in the city of Bloomington, against the trustees elected by the majority, to prevent an alleged misappropriation of the church property. The record shows that the church in question was organized in 1833, as a Presbyterian body, the division of that denomination into old school and new school not having then occurred. This separation took place in 1838, and the Bloomington society, during the same year, attached itself to the new school organization. It so continued until 1848, when, with the consent of the presbytery of which it formed a part, it withdrew, and attached itself to the old school denomination. It thus remained until 1865, when a large majority of the church and congregation voted to sever their connection with the old school organization

and return to the new school, and this was done. The discontented minority, which preferred the old school, elected new trustees, who have filed this bill against the party in possession, claiming that the church property rightfully belongs to them. The circuit court, when the case came on for a hearing, ascertained through its master, the exact number of church members, and pew-holders not church members, comprised in the society at the time of its final action for withdrawal from the old school in June, 1865, and further ascertained how many of these persons belonged to each party, and decreed a sale of the property, with the privilege of purchase to either the complainants or defendants, and to them only; the decree further providing that the party purchasing should retain exclusive possession of the property, and pay to the other party its proportionate share in money, which share was found to be sixty-three parts out of one hundred and ninety-two to the complainants, or old school party, and one hundred and twenty-nine parts, out of one hundred and ninety-two, to the defendants, or new school party. The decree further required the party receiving the money to invest it in other church property, and report to the court the manner of its investment. The complainants appealed, and both parties have assigned errors.

It is first urged, by counsel for appellants, that the withdrawal of a portion of the church, although a majority, from the old school denomination, was an abandonment of its rights of property, on the ground that a majority of a religious society have no right to abandon its tenets and doctrines, and still insist on the control of its property, which has been dedicated to the support of its peculiar faith. Conceding this to be correct, as the statement of a general principle, it clearly has no application to the present case. It is· shown by the record that there has been here no abandonment of the faith or doctrines which this church was originally founded to support. It is shown that the old school and new school branches of the

Presbyterian church adopt the same standards, both as to doctrines and forms of government, and the separation in the denomination arose from a cause which has long since ceased, and, in the language of one of the clerical witnesses, the difference continues " simply because they are separated." When, therefore, a majority of the Bloomington church resolved to bring that body into denominational connection with the new school Presbyterians, it was not perverting the church property to the teaching of new doctrines, but merely connecting itself, for the purposes of co-operation and church government, with another branch of substantially the same church.

But, besides all this, the lot upon which the church edifice stands, was donated to that body while attached to the new school presbytery, and the building was commenced and well nigh completed before the church, in 1848, attached itself to the old school organization. In the face of this fact, it is difficult to see on what ground a court could hold that the majority of the church, by returning to their original church connections, have forfeited all rights of property in favor of those members of the society who prefer their existing ecclesiastical relations, or how the appellants can claim more than the distributive share of the property which the court has awarded to them.

It is also urged, that the constitution of the Presbyterian church does not recognize the right of a church or congregation to withdraw; and on this point the evidence of clergymen, taken in the case of *Ferraria* v. *Vasconcellos*, 31 Ills. 25, was admitted by agreement. From the testimony in that case, and in the one before us, it is clear that, though no written law of the church may recognize the right of withdrawal, yet, since the separation of this body into the two branches of old and new School, the right of churches to transfer themselves from one to the other of these branches, has been often exercised, and tacitly acknowledged. But in the face of the facts we have already mentioned, it is unnecessary to discuss this question. The property of this church has been

acquired partly under one organization and partly under the other; and inasmuch as the sole object of a court of chancery, in cases of this character, is to enforce a trust, and hold the trust property to the purposes for which it was originally given, no fairer or more equitable mode of doing this can be devised than the one adopted by the circuit court. It was the rule adopted by this court in the case already referred to in 31 Ill., and is as applicable to this case as to that. It is not a case for forfeiture on one side or on the other, of the entire property, because both parties really represent the Presbyterian church, and teach the same religious faith; but inasmuch as the two branches of the church have distinct organizations, and as the property has come from both, it is just that the majority shall be permitted to change the church connection without forfeiture, while the right of the minority to remain in the existing relations and retain their portion of the property, should be equally recognized.

It is further objected by appellants, that the rule adopted March 12, 1865, by which the right of voting in matters pertaining to the congregation, was thenceforth to be confined to persons contributing to the expenses thereof, was unreasonable, and contrary to the usages of the denomination, inasmuch as it denied a vote to certain members of the church in regular standing. The propriety of the rule may well be questioned, but as the record shows that no practical harm to the minority arose therefrom, the fact of its adoption is not a sufficient reason for overturning all these proceedings, and opening this quarrel afresh. This rule was adopted in March. In May the first vote was taken as to withdrawal, and a question having been raised on the regularity of that vote, the matter was again submitted to the congregation in June, and a resolution being offered to affirm the proceedings of the meeting held in May, it was carried by a vote of sixty-one to sixteen. At neither meeting was the right of voting denied to any member of the church seeking to exercise it. But besides

this, it appears, by the report of the master, that there were, in all, but thirty-one members of the church who had ceased to contribute to its expenses, and who belonged to the old school party ; so that if every one of those disqualified by the. rule and belonging to that side, had been present at the June meeting, and voted adversely to the resolution, it would still have been carried by a majority of fourteen votes. Since, then, the members to whom the rule applied were not present asserting their right, and since, if they had been, and the right had been conceded, the result would have been the same, the adoption of the rule of March 12th is not sufficient ground for reversing the decree. That a very large majority of this church and congregation were in favor of withdrawal, is clearly shown in this record, and indeed, is not denied.

It is said the right to vote should have been confined to church members. We are not of that opinion. It often happens that persons belonging to the congregation, but not members of the church proper, are among the largest contributors to the erection of church edifices and to the support of a clergyman, and on a question affecting the property of the congregation, their right to a voice cannot be reasonably questioned.

It is assigned, as a cross-error, that the court, in making partition of the property, did not include, in the new school party, certain persons who were neither members of the church nor pew-holders, but were still members of the congregation. But we are of opinion that the court acted wisely. Mathematical nicety, in a matter of this sort, is not attainable or important. The precise number of persons who may, in a general sense, be called members of a religious congregation, it would be very difficult to determine, nor would it be easy to fix an age at which the children of a family should be held no longer represented by their parents. The only clear and satisfactory rule is that adopted by the circuit court, counting church members by virtue of their membership, and

counting, in addition, as permanent members of the congregation, all pew-holders, as it is by the rental of the pews, or a tax upon the holders, that the church is sustained.

It is also urged, that the court improperly included, in the basis of its decree, certain persons who had not, for a considerable period, attended the church. But the church records showed that, at the date of the last vote, they were members in regular standing, and it further appears they still resided within the bounds of the church. On this question, the court properly held the church records conclusive.

After having carefully examined this record, we are of opinion that the decree of the circuit court administers substantial justice, and it must be affirmed.

*Decree affirmed.*