|119  477
|126  545

[L. A. No. 164.   In Bank.—December 30, 1897.]

N. L. WHEELOCK et al., Appellants, v. FIRST PRESBYTERIAN CHURCH OF LOS ANGELES et al., Respondents.

RELIGIOUS CORPORATIONS—DIVISION OF CHURCH—ACTION FOR DIVISION OF FUNDS—PARTIES—REPRESENTATION OF NUMEROUS MEMBERS.—Where an incorporated Presbyterian church was divided, by authority of the Presbytery, into two organizations, to each of which was given a new name, and the Presbytery directed a division of funds realized from a sale of real estate of the corporation to be made between the two churches in proportion to their membership, and the minority organized another church in pursuance of the decree of the Presbytery, but the majority repudiated its action, and refused to organize a new church as directed, but retained and insisted upon the corporate name, and refused to pay any part of the funds to the new church, an action in equity may be brought on behalf of the new

church to compel an·equitable division of the trust funds; and the new church being an unincorporated body, consisting of numerous members, alleged to have a common and personal interest in the cause of action, a few of its members may maintain the action on behalf of themselves and all others of its members, and where the parties defendant consisted of the corporation and its trustees, and of a few individuals who were made members of the other church ordered by the Presbytery to be organized by the majority, who are alleged to be sued on behalf of themselves and all other members ordered to make such organization, and who refused to abide by the action of the Presbytery, there is no defect of parties plaintiff or defendant.

ID.—POWER OF ECCLESIASTICAL COURT—AUTHORIZED DIVISION OF CHURCH—CONCLUSIVENESS OF ACTION.—Conceding that neither the Presbytery nor a commission appointed by it had power to divide and apportion the moneys of the corporation, and that the division thereof is matter for the civil courts, yet the Presbytery, as an ecclesiastical court, had the power to deal with the Presbyterian church as an ecclesiastical body, in all matters ecclesiastical, and had power to dissolve and disband the church, and to divide it into two new and independent organizations, and its decisions and decrees pertaining to the church as an ecclesiastical body are not only binding upon that body, but are also binding and conclusive upon the courts, wherever and whenever material to pending litigation.

ID.—INCORPORATION OF CHURCH—CONSTRUCTION OF CODE—SUBORDINATION OF TEMPORALITIES—AGENCY—TRUST RELATION TO MEMBERS—JURISDICTION OF COURTS.—The incorporation of a church as a religious body; under the Civil Code of this state, is permitted only as a convenience to assist in the conduct of the temporalities of the church, and, notwithstanding incorporation, the ecclesiastical body is all important; and the incorporation is subordinate in the life and purposes of the church, and its function and object is to stand in the place of an agent holding title to the property and managing it ·in the interest of the church as an ecclesiastical body, and its position is that of a trustee, holding property for the use and enjoyment of the church, and every member of the church is a beneficiary of that trust; and courts will deal with the property of a church and enforce a trust therein in the same way, whether it is incorporated or not.

ID.—ECCLESIASTICAL DIVISION OF INCORPORATED CHURCH—DIVISION OF FUNDS IN EQUITY—EFFECT UPON CORPORATION IMMATERIAL.—The fact of incorporation of a church under the Civil Code, in accordance with its rules, regulations, and discipline, does not stand in the way of or preclude an ecclesiastical division of the church into two churches under an ecclesiastical authority having jurisdiction of that matter; and where an incorporated Presbyterian church has been thus divided by the Presbytery, a court of equity will divide a trust fund held by the corporation for the benefit of its members, *pro rata* between the two churches, according to the number of members assigned by the Pres--

bytery to each new church organization decreed by it to be formed;
and it is immaterial to inquire whether such division will have the
effect indirectly to result in the dissolution or death of the corpora-
tion or not.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

A. M. Stephens, and Shirley C. Ward, for Appellants.

J. S. Chapman, and J. W. McKinley, for Respondents.

GAROUTTE, J.—The sufficiency of the complaint is the only question before the court upon this appeal, judgment having been entered upon an order sustaining a demurrer thereto. A condensed recital of the main facts disclosed by the pleading becomes necessary.

The First Presbyterian Church of Los Angeles was composed of about eight hundred members, and was incorporated according to the laws of the state.   As such corporation it was the owner of certain real estate, which it sold for the sum of fifty thousand dollars, approximately.   It was contemplated that this fund of money should be applied to the purchase of a suitable site and the erection of a church building thereon.   When the time approached for the selection of such site, unanimity of opinion was lacking, and dissensions arose.   A slight majority of the members desired a particular location for the church; a large minority opposed the choice of the majority.   The trustees of the corporation, representing the wishes of the majority, purchased a tract of land and proceeded toward the erection of the church.   Thereupon the minority, by petition, placed the facts before the Presbytery, a church tribunal having control and supervision of the Presbyterian Churches of the city of Los Angeles.   By this petition the minority asked the Presbytery to divide the First Presbyterian Church of Los Angeles as a religious body into two churches, and to make an equitable division of the aforesaid fund of money.   In due course, and after hearing the respective claims of all parties interested, the Presbytery by resolution declared:

"1. That the First Presbyterian Church of Los Angeles be and

hereby is divided into two organizations; 2. That so many of the members of the First Presbyterian Church of Los Angeles whose names appear upon the petition aforesaid, and who may desire, together with as many others as may sign this petition, and those who may hereafter unite with them by letter or by confession of their faith, shall constitute a church to be known as 'the Central Presbyterian Church of Los Angeles,' or by any other name which they themselves may hereafter adopt and the Presbytery approve; 3. . . . . . 4. That the residue of the membership of said First Presbyterian Church of Los Angeles, California, shall also constitute a church to be known as the 'Westminster Presbyterian Church of Los Angeles,' California, or by any other name which they themselves may hereafter adopt and the Presbytery approve; 5. That the pastor of the said First Presbyterian Church of Los Angeles, the Reverend Burt Estes Howard, be now and is the pastor, and that the members of session of the First Presbyterian Church whose names do not appear upon the petition aforesaid be now and are the session of the Westminster Presbyterian Church; 7. That the records of the First Presbyterian Church of Los Angeles be given to the Westminster Presbyterian Church."

The Presbytery made a further order that a commission of five members upon due hearing apportion the aforesaid fund. This commission, upon such hearing, found that three hundred and sixty-nine members had been formed by the decree of the Presbytery into the Central Presbyterian Church, and that four hundred and twenty-two members of the original First Presbyterian Church by the decree of the Presbytery had been formed into the Westminster Presbyterian Church, and the commissioners thereupon apportioned the funds between the two new Presbyterian churches upon such basis of membership. The Central Presbyterian Church, recognizing the action of the Presbytery and in accordance with its decree, fully organized as a church of the Presbyterian denomination. The Westminster Church, not recognizing but repudiating the action of the Presbytery, did not organize as contemplated and directed by the Presbytery. The First Presbyterian Church of Los Angeles (corporation) has refused to pay over to the Central Presbyterian Church any portion of the money fund in its hands, though demand has been made.

This action is brought by N. L. Wheelock and E. F. Henderson, for themselves and on behalf of all other members of the Central Presbyterian Church of Los Angeles, to recover such proportion of this fund of money, which is claimed to be a trust fund, as the number of members of the Central Presbyterian Church bears to the entire number of members of the First Presbyterian Church. The corporation is made defendant. Certain individuals by name, who were made members of the Westminster Presbyterian Church by the action of the Presbytery, and who refused to recognize and follow such action, are also made defendants. These parties are made defendants for themselves and in behalf of all other members of the Westminster Presbyterian Church who refuse to recognize and abide by the action of the Presbytery. It is further alleged that all such members have a common and personal interest in the cause of action set forth herein, and that such members are so numerous as to render it impracticable to name them all. The trustees of the corporation are also made parties defendant.

There are technical objections made to the complaint, to the effect that there exists a lack of proper parties plaintiff, and also a defect of parties defendant. It is insisted that individual members of the Central Presbyterian Church have no standing to begin the litigation, but that its board of trustees is the proper party to inaugurate such proceeding. The Central Presbyterian Church is an unincorporated body. While it had a board of trustees, the powers and functions of that board are not set forth in the complaint and consequently we know not what they are. Leaving the question as to the right of the board of trustees to bring this action an open one, the court is still firmly possessed of the opinion that the action is properly inaugurated. The plaintiffs bring the action for the benefit of all the members of the Central Presbyterian Church. In effect, each member is a party plaintiff, and that all the members could jointly bring the action we feel well assured. It is said in *Smith v. Swormstedt,* 16 How. 288: "The rule is well established that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and the others; and a bill may also be maintained against a portion of a numerous body of defendants representing a common

interest." *Baker v. Ducker*, 79 Cal. 365, is to the same effect. We find no defect of parties defendant.

This is an action in equity to enforce a trust against the First Presbyterian Church of Los Angeles, a corporation, in favor of the Central Presbyterian Church, or the members thereof. It may be conceded, for the purposes of the case, that neither the Presbytery nor the commission appointed by it had the power to divide and apportion the money held by the church corporation; and that the disposition of those moneys were matters for civil courts, and that ecclesiastical decrees bearing upon such disposition are not binding upon judicial tribunals. But the ecclesiastical court known as the Presbytery had the power to deal with the First Presbyterian Church in all matters ecclesiastical. The church as an ecclesiastical body was under the absolute control and dominion of the Presbytery, and the decisions and decrees of that body were as binding upon it as the decisions and decrees of this court are binding upon inferior judicial tribunals. Those decrees are not only binding upon the church as an ecclesiastical body, but they are binding and conclusive upon courts wherever and whenever material to pending litigation. (*Gaff v. Greer*, 88 Ind. 122; 45 Am. Rep. 449.) This Presbytery had the power to dissolve and disband the First Presbyterian Church, and it exercised that power. The record of its action, as disclosed by the pleading, shows an effectual dissolution of the Church known as the First Presbyterian Church of Los Angeles. It was divided into two new and independent organizations. Even its church records were transferred. As a church nothing was left of it. It is apparent that many members were grieved at such results and deemed the treatment harsh, but all must bow to the law, and ecclesiastical law equally with civil law is binding in its own domain. The complaint alleges "that by virtue of such decisions, such form of government, and such book of discipline, each Presbytery has the power, upon the petition of the minority of the members of a local Presbyterian church within its territorial jurisdiction, to dissolve and divide a church into two church organizations or congregations, . . . . and that such action is binding upon the church so divided and the churches so created."

The spiritual or ecclesiastical body being dissolved, what becomes of the money held by the corporation? This question

brings before us the consideration of the status of the corpo-
ration as relating to the church proper.   The Civil Code of this
state (original section 595) expressly permits religious bodies to
incorporate, but such incorporation is only permitted as a con-
venience to assist in the conduct of the temporalities of the
church.   Notwithstanding incorporation the ecclesiastical body
is still all important.   The corporation is a subordinate factor in
the life and purposes of the church proper.   A religious corpora-
tion like the one at bar, under the laws of this state, is something
peculiar to itself.   Its function and object is to stand in the
capacity of an agent holding the title to the property, with power
to manage and control the same in accordance with the interest
of the spiritual ends of the church.   It is said in *Winebrenner v.
Colder*, 43 Pa. St. 249: "The legislature never means by granting
or allowing such charters to change the ecclesiastical status of
the congregation, but only to afford them a more advantageous
civil status.   The directors or trustees of the corporation, as
such, have no authority whatever over church affairs.   These
matters rest purely with the ecclesiastical body.   Whatever
property stands in its name is seised to the use of the church
proper.   It is a trustee holding property for the use and enjoy-
ment of the church, and every member of the church is a bene-
ficiary of that trust."   "By the election which organized the
corporation the title became vested in the trustees and their suc-
cessors for the use of the trust, as completely as if the use had
been declared by deed. . . . . A trust of this character is not
distinguishable in this from any other trust over which courts of
equity exercise a supervisory power." (*Brunnenmeyer v. Buhre*,
32 Ill. 183.)

Without considering the status of the Westminster Presbyte-
rian Church we have here the Central Presbyterian Church
claiming a portion of this money as a beneficiary of the trust.
This church is not a seceder.   It has set up no antagonistic
faith.   It is true to the doctrine of Presbyterianism.   It is faith-
ful to the decrees of the higher ecclesiastical powers.   It is in
good standing as a church of that denomination.   Its members
were beneficiaries of the trust before the Presbytery divided the
church, and in justice and equity must stand in the same position
after division.   The Presbytery had power to divide the old

church into two other and new churches. It exercised that power. Such exercise simply made two church beneficiaries instead of one. The old church being dissolved there is no beneficiary if the Central Presbyterian Church is not one, for the members of the old church not affiliating with these plaintiffs are certainly in no better position as to the trust fund than the plaintiffs. We see little difficulty in equity dealing with this question. Indeed equity fears no difficulty. The action of the Presbytery has rendered any further administration of the trust by the corporation if not impossible, certainly inadvisable. And a court of equity would deem it for the best interests of all concerned that the trust fund be divided. The property was held in trust for a certain church congregation. That church has been legally divided into two branches. These branches are its legal successors, and the money should be apportioned according to the numerical strength of each. This was the course adopted in *Nicholls v. Rugg,* 47 Ill. 47, 95 Am. Dec. 462, the court saying: "The property of this church has been acquired partly under one organization and partly under the other; and, inasmuch as the sole object of a court of chancery in cases of this character is to enforce a trust and hold the trust property to the purposes for which it was originally given, no fairer or more equitable mode of doing this can be devised than the one adopted by the circuit court." In *Ferraria v. Vasconcellos,* 31 Ill. 53, it is said: "The congregation were before the separation the beneficiaries under the deed, and we see no reason why they are not so still. The proceeds of the property ought, therefore, to be divided between them in the proportion which the seceding and adhering members of that congregation bear to each other in point of numbers. This will protect the rights of all parties, and is manifestly equitable and just." The chief justice of the court in a separate opinion saying: "In a case thus peculiar in its facts, differing as it does from all others which we find reported, where neither party has incurred a forfeiture, we are to apply the rules of equity and a sound morality. This can only be done by a division of the property, where the members of the church have thus become divided in numbers nearly equal." The celebrated case of *Smith v. Swormstedt, supra,* involving a division of the Methodist Episcopal church, directly presents the principle

here discussed, and in that case the court said: "The division of
the Methodist Episcopal church having thus taken place in pur-
suance of the proper authority, it carried with it as matter of law
a division of the common property belonging to the ecclesiastical
organization, and especially of the property in this book con-
cern, which belonged to the traveling preachers." It is de-
clared by the supreme court of Indiana that "the title to the
property of a divided church is in that part of the organization
which is acting in harmony with its own law." (*White Lick etc. v.
White Lick etc.*, 89 Ind. 136.) In the somewhat celebrated case
of *Watson v. Jones*, 13 Wall. 726, a case which directly involves
the principles of law at issue here, the court said: "Here is no
case of property devoted forever by the instrument which con-
veyed it, or by any specific declaration of its owner to the sup-
port of any special religious dogmas or any peculiar form of wor-
ship, but of property purchased for the use of a religious congre-
gation, and so long as any existing religious congregation can be
ascertained to be that congregation, or its regular and legitimate
successor, it is entitled to the use of the property. In the case of
an independent congregation, we have pointed out how this
identity or succession is to be ascertained, but in cases of this
character we are bound to look at the fact that the local congre-
gation is itself but a member of a much larger and more impor-
tant religious organization, and is under its government and
control, and is bound by its orders and judgments."

Counsel for defendants in effect concede the general propo-
sitions advanced by these cases as sound, but claim in substance
that this doctrine can only apply to unincorporated churches. It
is insisted that the First Presbyterian Church being incorporated,
the fact of incorporation stands as a lion in the path absolutely
prohibiting any application of the doctrine of a *pro rata* division
of the property. It is declared that the action of the Presbytery
in dissolving the church, taken in connection with the decision
of the court here prayed for, would result in an absolute disso-
lution of the corporation, and it is contended that a corporation
under the laws of this state cannot be dissolved in that way.
The trial court took this view of the case, and upon this ground
sustained a general demurrer to the complaint. In this connec-
tion plaintiffs claim that the corporation consists of the trustees

of the church alone. Defendants claim that every member of the church is a member of the corporation. But the solution of this contention does not appear to be material. A corporation composed simply of the trustees, or of all the members, is still a body separate and distinct from the church proper, and, even though each individual stands in the dual capacity of a member of the corporation and a member of the church proper, still the conditions are not altered thereby. The two bodies are as separate and distinct as though the trustees alone constituted the corporation. Again, we are not particularly concerned whether or not the action of the Presbytery and the court indirectly result in the dissolution of the corporation. The Presbytery had the power to deal with the church, and the court certainly has the power to deal with the property; and if the exercise of these powers result in death to the corporation, what of it? It is apparent that its usefulness is gone any way. Defendants' contention of necessity results in the maintenance of the proposition that where church property stands in the name of the corporation the Presbytery has no power to dissolve or divide the church. This cannot be so. The act of incorporation does not infringe or limit the powers possessed by the Presbytery, for that body possesses no powers which form the subject matter of state legislation. And we know of no reason why courts will not deal with the property of a church in the same way, whether incorporated or not; and, likewise, presbyteries have the power to deal with the ecclesiastical body regardless of any question of incorporation.

Defendants rely upon certain decisions of the courts of New York, Michigan, and Wisconsin. (*Robertson v. Bullion*, 11 N. Y. 243; *Wilson v. Livingstone*, 99 Mich. 594; *Fadness v. Braunborg*, 73 Wis. 257.) In answer to the doctrine of these cases, counsel for plaintiffs have well pointed out that under the law of those states permanent trusts for charitable and religious uses are void. Hence, corporations formed by religious societies could not hold property at all if a trust attached. But the case of *Hale v. Everett*, 53 N. H. 9, 16 Am. Rep. 82, reviews these authorities, and holds them to be authority only where similar statutes are to be found. That case, it may be said, goes to the full limit of holding the existence of a trust relation between the church proper

and the corporation. In this state, under a section of the Civil Code we have heretofore cited, religious bodies can only be incorporated in accordance with their rules, regulations, and discipline. The cases from the three states mentioned go away beyond the doctrine laid down in this state. The Michigan case especially declares that a majority of the members may control the property of the corporation, and practically that the title of the property of the corporation follows that majority wherever it may lead and however often and radical a change of faith overtakes it. In this state we take the other view. In *Baker v. Ducker, supra*, a case involving the property rights of the members of an incorporated church, this court said: "It is thus made clear that the property in question was held by the Reformed church in trust for its members, and the defendants, even though they constituted a majority of the members, had no right and no power to divert it to the use of another and different church organization."

For the foregoing reasons the judgment is reversed and the cause remanded, with directions to overrule the demurrer.

Harrison, J., Temple, J., Van Fleet, J., and Henshaw, J., concurred.

Rehearing denied.