## THE TRUSTEES OF THE EUTAW STREET METHODIST EPISCOPAL CHURCH ET AL. *vs.* THE ASBURY SUNDAY-SCHOOL SOCIETY ET AL.

*Religious Societies—Separation Into Different Organizations— Title to Property.*

At a time when a religious society had under its charge two churches and affiliated with it two corporations, one for the relief of the poor, and the other the A. Sunday-School Society, a will was probated by which sums of money were bequeathed to these two corporations, subject to a life estate. Before the legacies became payable, the two churches were separated and made independent by competent ecclesiastical authority, and a resolution of the members directed that the property of the parent society, and legacies to be received, should be divided between the separated churches. Subsequently the said legacies were paid to the corporations named in the will, both of which were connected with one of said churches, and the bill in this case, filed by the other church and its societies, asked for a division of the legacies. *Held,* that the resolution adopted by the members of the religious society at the time of its separation is of no effect as to this property, because it was not the action of the directors of the corporations, legatees.

*Held,* further, that the Society for the Relief of the Poor was not an integral part of the organization of the church and that the corporation named in the will is entitled to the whole of the legacy paid to it.

*Held,* further, that since the A. Sunday-School Society was an integral part of the church organization which was divided, one-half of the legacy paid to it should now be transferred to the Sunday-School Society of the other church, as the legacy was intended to be for the benefit of the Sunday-schools of both churches.

*Decided January 12th, 1909.*

Appeal from the Circuit Court of Baltimoie City (EL-LIOTT, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Joseph C. France* and *Richard M. Duvall,* for the appellants.

*Charles E. Hill* and *John Philip Hill,* for the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

By his last will and testament, dated March 12th, 1868, Thomas Armstrong, since deceased, of Baltimore City, among other bequests, gave and bequeathed as follows:

"To the Society for the Relief of the Poor of the Methodist Episcopal Church of Baltimore City Station (duly incorporated), $1,000, to be invested and the interest applied for the use of said society."

"To the Asbury Sunday-School Society of Baltimore, $1,000."

The precise date of Mr. Armstrong's death does not appear, but his will was duly probated on November 19th, 1868.

By the provisions of the will these legacies were not to be

paid until after the death of the testator's wife, who survived him about 13 years, dying in the year 1881. Subsequently, in the year 1882, these legacies were paid to the legatees above named, both incorporated bodies, and it is to recover one-half of both these legacies that the suit in this case was instituted by the three appellant corporations in the Circuit Court of Baltimore City.

In order to understand the nature of the appellant's claim, it will be necessary to relate the circumstances under which the Methodist Episcopal Church organization in Baltimore City existed at the time of the making and probating of Thomas Armstrong's will, and to note certain changes that took place in its organization subsequently.

At the time of the date of the will, as well as of its probate, there were two churches of this denomination in Baltimore City one the Light Street Church and the other the Eutaw Street Church, which together constituted what was known as the Baltimore City Station of the Methodist Episcopal Church.

The Baltimore City Station, as such, was not incorporated, but there was a corporation known as the "Trustees of the Methodist Episcopal Church in the City and Precincts of Baltimore," which held the legal title to the property of both these churches, consisting of the church edifices, the land upon which they stood, a cemetery and other assets.

There were also at that time two other corporations connected and affiliated with the Baltimore City Station, one of which was "The Asbury Sunday-School Society of Baltimore," and the other "The Society for the Relief of the Poor of the Methodist Episcopal Church, Baltimore City Station," the two corporations named as legatees in the will of Thomas Armstrong, as above mentioned.

The preamble to the articles of incorporation of the Sunday-School Society was to the effect that the association was formed "in connection with the Sunday-schools belonging to Baltimore City Station of the Methodist Episcopal Church," and its charter empowered the corporation to receive, hold

and possess property, and to sell, transfer or lease the same in such manner as would be most conducive to the benevolent uses of the society.

The object of the Society for the Relief of the Poor was declared to be to afford "pecuniary aid and assistance to the indigent and poor members of the Methodist Episcopal Church attached to that part of said church in the City of Baltimore, commonly known as the 'Baltimore City Station,' and for no other purpose or purposes whatsoever."

The testator in his lifetime was a member of the Light Street Church, but attended, in the latter years of his life, most frequently the Eutaw Street Church, as he lived within a block of that church. It was also shown that he was much interested in all the work of the station.

A short time after Mr. Armstrong's death—that is to say, in March, 1869, at a session of the Baltimore Conference of the Methodist Episcopal Church, the Bishop presiding at said Conference, in the exercise of his legitimate powers and functions, separated "the ecclesiastical relationship" which had so long existed between the two charges constituting the Baltimore City Station, to wit, Light Street and Eutaw Street Churches, so that thereafter these two congregations or charges became ecclesiastically separate and independent churches.

On September 27th, 1869, a meeting of the male members over twenty-one years of age of the Baltimore City Station met in the Light Street Church, and by certain resolutions, which were adopted, directed a deed to be made by the trustees of the M. E. Church in the City and Precincts of Baltimore to the trustees of the Eutaw Street Church, as soon as they should be duly elected according to law, of their church lot and improvements on Eutaw Street, and also to pay to the trustees of the Eutaw Street Station the sum of $14,500.

This meeting of male members also passed the two following resolutions:

"*Resolved,* That any unpaid legacies when due and paid shall be equally divided between Baltimore City Station and Eutaw Street Station."

"*Resolved*, That we respectfully advise the Society for the Relief of the Poor of Baltimore City Station to equally divide the funds held by them, known as the 'poor fund.' "

Soon thereafter the trustees of the Eutaw Street Church became an incorporated body and the deed for its church property was made to them and the sum of $14,500 paid them in accordance with the aforementioned resolution to that effect.

Subsequently the Eutaw Street Methodist Episcopal Sunday-School of Baltimore City and The Society for the Relief of the Poor of the Eutaw Street Station Methodist Episcopal Church of Baltimore City, two of the appellant corporations, were duly incorporated, and the former received from the Asbury Sunday-School Society of Baltimore all the books, bookcases, maps and other Sunday-school paraphernalia pertaining to the Eutaw Street Sunday-School; while the Poor Society of the Eutaw Street Station received from the Poor Society of the Baltimore City Station the sum of about $3,000 as its share of the 'poor fund' held by the latter society at the time of the separation of the two congregations.

After the transfer of the property and the payment of the sums of money above mentioned, the division of the old Baltimore City Station into two separate and independent stations was complete, but at the time this was accomplished the legacies from the estate of Thomas Armstrong were not yet due and payable, because his widow still survived, and, as before stated, by the terms of the testator's will, the legacies were not payable until after her death.

This event occurred, as we have seen, in the year 1881, and the following year the money was paid to the two legatee corporations, both of whom overlooked or ignored the resolutions adopted at the male members' meeting on September 27th, 1869, providing for a division of the legacies when received, and retained the whole to their own respective uses and purposes.

It seems that the members of the Eutaw Street Station in the course of the thirteen years that elapsed from the death of Thomas Armstrong until the death of his widow had also

overlooked or forgotten the fact these legacies had been left
to the Asbury Sunday-School Society and to the Poor Society
of the old Baltimore City Station before its division into two
stations, and also had forgotten the resolutions adopted at the
male members' meeting, and so made no demand for the half
of either of the funds until the year 1895, when Mr. Joshua
S. Rawlings, a member of Eutaw Street Church, and one of
those present at the meeting of the male members of the old
Baltimore City Station on September 27th, 1869, in looking
over the minutes of the proceedings of the church for a long
period of years, came upon the resolution first above men-
tioned.  At once, he says, he recollected the circumstances,
and exclaimed: "There is the Armstrong legacies, and we have
never received a part of them."

Mr. Summerfield Baldwin, who also testified in the case as
a witness for the complainants, stated that the resolution re-
ferred specifically to the two Armstrong legacies.

The matter was at once taken up with the several defend-
ant corporations, but more especially with the trustees of the
Methodist Episcopal Church in the City and Precincts of
Baltimore, and a number of years was spent in the fruitless
effort to bring about an adjustment of the matter without
resorting to law; but as no recognition whatever was given
the claims of the complainants or of either of them to any
part of either of said legacies, this suit was finally instituted
to recover what the complainants contend is justly and fair-
ly due them, to wit, one-half of each of said legacies, with in-
terest.

The first question presented is as to the force and effect of
the resolution first above mentioned providing for the equal
division of the legacies, when they should be received, be-
tween Baltimore City Station, which was the name retained
by the Light Street Church after the separation, and the new
Eutaw Street Station.  As to this question, it is clear what-
ever may be the force of the resolution in suggesting a fair
apportionment of these legacies, it could not have the effect
of lawfully dividing them.

The male members' meeting at which the resolution in question was adopted, although consisting of members from all three of the defendant corporations, could not, by any action it might take, bind the two legatee corporations, because the members present were not then acting as a board of managers of these corporations, but only as members of the two congregations then constituting the old Baltimore City Station, who had been called together for the purpose of giving their consent and approbation to the transfer of certain church property and money from the old Baltimore City Station to the newly erected Eutaw Street Station.

It is true that the notice of the meeting stated that its purpose was "to ratify and confirm the award of the arbiters appointed to settle the financial question between the two charges and to authorize the corporation to carry into effect said award," but whatever the award of the arbiters may have been, and it does not appear in the record, the form of the notice could not enlarge the powers of the male members beyond those given them by the charter of the church corporation to which they belonged. These powers were merely to give or withhold their consent and approbation to the transfer of certain church property and money from the old Baltimore City Station to the new Eutaw Street Station.

It is manifest therefore that whatever right the complainants or either of them may have to any part of either of these legacies, such right cannot be traced to or derived from the resolutions in question. But it is contended that independent of the resolutions when a church is ecclesiastically divided, a division of the common property follows as a matter of law.

For this contention there is certainly the warrant of high authority.

In the case of *Niccolls* v. *Rugg,* 47 Ill. 47, it was held that "in case of a division of a religious society, both parties still adhering to the tenets and discipline of the organization, the property should be divided between them in proportion to their members at the time of such separation."

In 20 *Am. & Eng. Enc. of Law,* title "Religious Societies," at page 809, the rule is stated generally to be that: "A division of a church made in pursuance of proper authority carries with it, ordinarily, a division of the common property of the organization." Citing *Smith* v. *Swormsteat,* 16 How. 288 (14 L. ed. 942); *Brooke* v. *Shacklet,* 13 Gratt 301; *Reeves* v. *Walker,* 8 Baxter (Tenn.), 277.

The most celebrated of these cases is that of *Smith* v. *Swormsteat, supra,* where the Supreme Court of the United States passed upon the question as to the right of the Methodist Episcopal Church South to a part of the property belonging to a corporation organized by the traveling preachers of the church before the division, in the first place, for the purpose "of circulating religious knowledge," and known as the "Book Concern," which had become a very wealthy corporation, with assets of nearly $1,000,000.

Mr. Justice Nelson, speaking for the Court in that case, said: "The division of the Methodist Episcopal Church having thus taken place in pursuance of the proper authority, it carried with it as a matter of law a division of the common property belonging to the ecclesiastical organization." Somewhat similar views are also expressed in the following cases. *Hale* v. *Everett,* 53 N. H. 9; *Diocese of Eastern Carolina* v. *Diocese of North Carolina,* 102 N. C. 442; *Wheelock* v. *Church,* 119 Cal. 477.

The doctrine as thus expressed is no doubt a fair and reasonable one, but the important question is, how far is it applicable to the facts of this case?

In the first place, while it is conceded that the Bishop, in dividing the old Baltimore City Station, exercised the proper functions of his office, yet that he only undertook to separate and did actually only separate "the ecclesiastical relationship" that had so long prior thereto existed between the two charges composing that station, namely, Light Street and Eutaw Street Churches. Such separation could therefore affect only the common property belonging to some integral part of the church organization.

As to the Society for the Relief of the Poor of the Methodist Episcopal Church of Baltimore Station, its object being to secure and afford pecuniary aid and assistance to the indigent and poor members of the church attached to that station, it was not an ecclesiastical society at all, but rather a benevolent or charitable one, whose work was closely connected with the work of the church, but essentially distinct therefrom; and therefore while affiliated with and auxiliary to the church organization, this society was certainly no integral part thereof. It is obvious, therefore, that the separation of the churches could not affect the property held or owned by this society for its own purposes, and the action of the lower Court in dismissing the proceedings as to this defendant must therefore be affirmed.

As to the Asbury Sunday-School Society, however, it is shown that its members had formed themselves into an association "in connection with the Sunday-schools belonging to the Baltimore City Station of the Methodist Episcopal Church" "for the purpose of teaching children on the Sabbath," and the corporation was by its charter authorized to hold, possess and enjoy real and personal property for the use of the society.

The instruction given in Sunday-schools is almost exclusively religious instruction, and at least one of such schools has for many years been considered a necessary adjunct of every well-organized church.

In the case of *Eutaw Place Baptist Church* v. *Snively*, 67 Md. 493, CHIEF JUDGE ALVEY, speaking for this Court, said: "The church is not organized simply to maintain a pulpit that its members may receive instructions from that source alone. Other means of religious instructions are as common, and are as much within the provisions of church regulation and direction as the pulpit itself. Prominent among these are the Bible class and Sunday-school."

In the case at bar it was proven that there were two Sunday-schools belonging to the Baltimore City Station of the Methodist Episcopal Church at the time the station was di-

vided by the Bishop in March, 1869, one connected with the Light Street Church and the other with the Eutaw Street Church, and it is well known that the Sunday-school is one of the ordinary means adopted in church organizations for the promotion of religious instruction and that its work is strictly within the scope of the church's proper functions.

We think therefore that these two Sunday-schools should be taken and considered as integral parts of the church organizations to which they were respectively attached, and necessarily integral parts of the ecclesiastical body divided by the Bishop in 1869. Of course, the Asbury Society was not the Sunday-school of either one of these churches, but it was the legal entity representing both Sunday-schools and holding title to the property of both; and any money or property given to the corporate body before the separation of the two charges would when received unquestionably be held by it for the benefit of both these Sunday-schools.

At the time of the separation of the two charges no money was paid by the Asbury Society to the Eutaw Street Sunday-School because, as testified by one of the witnesses, the Society at that time "had no money except the regular collection from the church for Sunday-school purposes," but it did give to the Sunday-School Society of the Eutaw Street Church the books, bookcases, maps and other property that had been purchased out of the funds of the society for the use of the Eutaw Street Sunday-School.

Had the society, then, the possession of the legacy of $1,000 from Thomas Armstrong's estate, the Eutaw Street Sunday-School in its corporate capacity would have been entitled to receive also a share of this legacy, for the benefit of its Sunday-school, not only as a matter of fairness and justice, but as a matter of law following the ecclesiastical separation of the two congregations.

Although the Asbury Sunday-School Society had not then the actual possession of this fund, it had a vested right thereto in remainder, and after the death of Mrs. Armstrong, in 1881, it received the fund in question and has ever since re-

tained it for the use and benefit of the Sunday-School of the Light Street Church (now known as the First Methodist Episcopal Church), and has paid no part thereof to the Eutaw Street Methodist Episcopal Sunday-School of Baltimore City, a body corporate, for the benefit of the Sunday-school of that ecclesiastical station.

As the right to this legacy was vested in the Asbury Sunday-School Society before the division of the Baltimore City Station, and as the legacy itself was unquestionably intended for the use and benefit of both these Sunday-schools, we think that after the separation "The Eutaw Street Methodist Episcopal Sunday-School," a body corporate, became entitled to a share of this legacy when it should be paid for the use of the Sunday-School of the Eutaw Street Station, of whose funds and property that corporation was then the proper custodian. A fair division of the fund with that corporation would in no wise be a diversion of the legacy from the purpose for which it was originally given, but on the contrary would be really enforcing the application of the fund to those purposes.

According to the rule laid down by the Courts in the cases cited above, the share of the common property to be received by the respective parties to a divided ecclesiastical organization is in proportion to their members at the time of the separation, but here, although the testimony shows that at the time of the separation of Baltimore City Station the Eutaw Street congregation was somewhat the larger, yet as the claim of the complainants is for but a half interest in the legacies, we think a settlement of the dispute should be upon that basis.

There has been much delay in bringing this action, but no defense is made upon the ground of *laches,* and, considering the peculiar circumstances of the case, we are not disposed to refuse relief on that ground.

As to "The Trustees of the Methodist Episcopal Church in the City and Precincts of Baltimore," one of the defendant corporations, neither of the complainants has shown any right of action against it, and the bill of complaint was properly dismissed as to that defendant, as well as to the other defend-

ant corporation known as the Society for the Relief of the Poor.

The two appellant corporations known as "The Trustees of the Eutaw Street Methodist Episcopal Church of Baltimore City" and "The Society for the Relief of the Poor of the Eutaw Street Station Methodist Episcopal Church of Baltimore" were not necessary parties to this proceeding, but that fact does not deprive the successful complainant of its remedy, and for the reasons we have already assigned we hold that the appellant corporation known as "The Eutaw Street Methodist Episcopal Sunday-School of Baltimore City" is entitled to one-half of the legacy received by the Asbury Sunday-School Society from the estate of Thomas Armstrong, but owing to the unusual conditions surrounding the case no interest will be allowed. We will therefore affirm the decree of the lower Court in part and reverse it in part, and remand the cause to the end that a decree may be passed in conformity with this opinion.

> *Decree affirmed in part and reversed in part, and cause remanded. Costs to be paid equally by the three unsuccessful contestants.*