[Civ. No. 5194. First Appellate District, Division One.—May 12, 1927.]

CHURCH OF CHRIST OF LONG BEACH (a Corporation) et al., Appellants, v. A. E. HARPER et al., Respondents.

[1] INJUNCTION — INTERFERENCE WITH RELIGIOUS SERVICES — ACT OF TRESPASS—CONTINUANCE NOT THREATENED.—An injunction will not issue to restrain defendants from alleged interference with the plaintiffs in conducting religious services in a church edifice,

1. Injunction against trespass, notes, 11 Am. Dec. 498; 53 Am. Rep. 346; 99 Am. St. Rep. 731; 15 Ann. Cas. 1235; 13 L. R. A. (N. S.) 173; 21 L. R. A. (N. S.) 417; 32 A. L. R. 463. See, also, 14 Cal. Jur. 210; 14 R. C. L. 457.

where the acts of defendants, placing the construction upon them most favorable to plaintiffs' contention, amount to no more than an act of trespass, not continuous, but completed on a given day, and its continuance is not threatened.

[2] ID.—TRESPASS—EQUITY—INSOLVENCY.—A court of equity will not interpose to restrain a trespasser simply because he is a trespasser, even though he be insolvent, unless the evidence indicates that the trespass already committed will probably be repeated indefinitely or is of a continuing nature.

[3] ID.—ECCLESIASTICAL CONTROVERSY—INVOLVEMENT OF PROPERTY OR CIVIL RIGHT.—The only basis for the court's interference in an ecclesiastical controversy is that some property or civil right is involved.

[4] ID.—ECCLESIASTICAL MATTERS—JURISDICTION OF CIVIL COURTS.— Civil courts in this country have no ecclesiastical jurisdiction; they cannot revise or question ordinary acts of church discipline, or properly interfere with that part of church management which concerns the spiritual welfare and discipline of the members, but only when rights of property are involved; and the jurisdiction of a civil court to adjudge any ecclesiastical matter must result as a mere incident to the determination of some property right.

[5] ID.—ADMISSION AND REJECTION OF EVIDENCE—ABSENCE OF PREJUDICE.—In an action in which defendants were charged with having interfered on a given day with the plaintiffs in conducting religious services, and in which an injunction was sought to restrain defendants from further interference, the objection that errors of law occurred during the trial in the admission and rejection of certain evidence going to the question of charges against members of the church and proceedings to dismiss them from membership did not in any manner prejudice the plaintiffs on the controlling issue, where they did not touch the transactions which occurred on said day, nor the circumstances connected therewith.

[6] ID.—ELECTION OF DIRECTOR OF CHURCH—EVIDENCE—ABSENCE OF PREJUDICE.—In such action, such alleged errors did not prejudice plaintiffs upon what they contend to be the issue, namely, the question whether one of the plaintiffs or one of the defendants was director of the church on the day of the alleged interference, where if all evidence objected to by plaintiffs had been excluded

---

2. Effect of insolvency of trespasser on right to injunction, note, 99 Am. St. Rep. 741. See, also, 14 Cal. Jur. 235; 14 R. C. L. 452.

3. See 23 R. C. L. 442.

4. Jurisdiction of civil courts over church controversies, note, 100 Am. St. Rep. 734. See, also, 23 R. C. L. 441. Jurisdiction of litigation growing out of schism or division in religious society, note, 24 L. R. A. (N. S.) 692.

and all evidence sought by them to be introduced had been admitted, neither could aid plaintiffs nor hinder defendants in establishing the withdrawal of fellowship from said defendant or the validity of the election of said plaintiff.

[7] ID.—POSITIONS OF PARTIES—FINDINGS—EVIDENCE.—In such action, the evidence was sufficient to support the findings that one of the defendants was at the time in question a director of the church, and that one of the plaintiffs was not at the time in question a director of the church.

(1) 4 C. J., p. 877, n. 80; 32 C. J., p. 51, n. 96.    (2) 32 C. J., p. 130, n. 36.    (3) 34 Cyc., p. 1182, n. 51.    (4) 34 Cyc., p. 1184, n. 54.    (5) 4 C. J., p. 963, n. 68.    (6) 4 C. J., p. 964, n. 76.    (7) 34 Cyc., p. 1198, n. 25.

APPEAL from a judgment of the Superior Court of Los Angeles County. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. A. Knight for Appellants.

Doyle, Clark & Thomas for Respondents.

CAMPBELL, J., *pro tem.*—In this action appellants pray that an injunction issue enjoining and restraining respondents from interfering in any way with appellants in conducting their religious services in the church edifice of appellant corporation in the city of Long Beach. No other judgment or relief is asked. The complaint alleges that on Sunday, May 6, 1923, respondents, in violation of the authority of the Church of Christ, entered the church edifice and took possession thereof and conducted religious services and excluded and refused to allow appellants to conduct their services and that respondents threatened to and will, unless restrained, continue to hold possession of the church property and to conduct services in the church building and will preach and teach doctrines which are opposed and foreign to the belief and teachings of the Church of Christ, and exclude appellants from conducting services and cause appellants great and irreparable injury, and that appellants have no plain, speedy, or adequate remedy at law, etc.

Appellants complain, first, that there are many errors of law which occurred during the trial of the action; second,

that the findings of fact and conclusions of law are in many respects not sustained by the evidence; third, that an injunction should have issued as prayed for in the plaintiffs' complaint to protect the orderly conduct of church services against these three evangelists, Harper, Roberts, and Burcher, as no church action had been taken either legally or otherwise to put others than the plaintiffs in possession of the church property or services.

The trial court found against the contention of plaintiffs and found that defendants did not on May 6, 1923, nor at any other time in defiance of plaintiffs, or the authority of the church, enter the church edifice or take possession of the same or exclude or refuse to allow plaintiffs to conduct their services; that while defendants W. G. Roberts and W. A. Burcher conducted religious services in the church on such date, plaintiffs were not excluded therefrom and that at the conclusion of said service plaintiffs held a religious service; that it is not true that defendants will preach hatred or false doctrines in the church edifice or doctrines or theories which are opposed or foreign to the belief or teachings of the Church of Christ, or will exclude plaintiffs from conducting services in the church edifice, or that the action on the part of defendants will cause great or irreparable or any injury to the plaintiffs.

If the appellants will not suffer great or irreparable injury if respondents are not enjoined and respondents have not threatened to and do not intend to take possession of the church and exclude appellants therefrom and the only interference shown is an act past and completed, the injunction should not issue.

It is not necessary to a decision of the point discussed to quote from the testimony of the many witnesses sworn in the case, for if there be evidence to sustain the findings, such findings will not be disturbed (*Nelson* v. *McCarty*, 5 Cal. App. 773 [91 Pac. 406]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]). From the testimony of W. P. Reedy, an appellant, Ernest Beam, and C. H. Cassell, there is reasonable certainty that the facts occurring on May 6, 1923, in the order of their sequence are as follows:

About 9:45 A. M., that being the regular hour for opening the Sunday morning services, appellant Rucker, an elder of the church, arose and began leading a song, and re-

spondent Rehkop immediately arose, stood by Rucker and sang the song in unison with him. At the close of the song respondent Rehkop announced another song and began singing it, whereupon Rucker took his seat and remained silent during the rest of the service. Before the second song had ended respondent Roberts mounted the stand and at the close of the song began reading a scripture lesson, at the end of which some member called upon him to lead in prayer. Following the prayer respondent Roberts announced that respondents Harper, Burcher, and Beam would take charge of the classes previously taught by Taylor and appellants Rucker and Reedy. Whereupon appellant Rucker arose and asked all loyal members to occupy the north end of the hall, and about one-third of the members present heeded his call. Rucker, together with those who stood with him, then conducted their classes, while at the same time respondents, with those who stood with them, held their session, neither faction interfering with the other. At the conclusion of the classes all parties repaired to the main church auditorium wherein the preaching service was customarily conducted. One or two songs were sung, appellant Rucker and respondent Rehkop leading the same in unison. Elder Taylor announced and led another song with no interference. Meanwhile respondent Roberts ascended to the pulpit and after this song began to read a scripture lesson and the elders Rucker and Taylor sat down. The respondents Roberts and Burcher conducted this service, which consisted of the communion and the sermon by Roberts, and there was no interference or protest on the part of appellants. At the close of this service appellants and their adherents immediately proceeded to conduct a preaching and communion service without in any manner being interrupted or disturbed by respondents. A sermon by Evangelist Morris had been previously arranged for and announced publicly at church by appellant Rucker, and a preaching service to be conducted by Evangelist Roberts had been previously arranged for and announced at church by respondent Burcher. In other words, on this Sunday morning two persons desired to lead the singing; one arose and started the song, the other joined in unison and the first subsequently quit and took his seat; two persons wished to teach the Sunday-school classes; one took charge, the other called

for those who wished to be taught by him and those who did separated themselves from the others and were taught by him. Respondent Roberts preached the sermon; no one else attempted to preach nor was Roberts requested by anyone not to preach, nor was any objection interposed. Respondents never attempted to exclude appellants from the church or to use force or menace.

Appellants fail to point out in their brief any evidence, nor have we been able to find any in the voluminous record before the court, indicating in any manner that respondents, or any of them, ever after the occurrence above enumerated interfered with or threatened to interfere with appellants' use of the church for religious services or with their conduct of any religious or other services therein, or that the respondents ever at any time after May 6, 1923, conducted a religious service or ever at any time threatened to conduct any religious service or ever preached or threatened to preach heretical doctrines therein or doctrines which are opposed and foreign to the belief and teachings of the Church of Christ, and it does not appear from the testimony nor from appellants' brief, or otherwise, except by the allegations of the complaint, that such threats were ever made.

[1] The acts of respondents of which appellants complain, placing the construction upon them most favorable to appellants' contention, amount to no more than an act of trespass, not continuous, but completed on that day, and its continuance not being threatened, the finding of the trial court must be sustained. [2] A court of equity will not interpose to restrain a trespasser simply because he is a trespasser, even though he be insolvent (*Mechanics' Foundry* v. *Ryall*, 75 Cal. 601 [17 Pac. 703]) ; unless the evidence indicates that the trespass already committed will probably be repeated indefinitely or is of a continuing nature (*Standard Lumber Co.* v. *Madary's Planing Mill*, 54 Cal. App. 107 [201 Pac. 129]).

In the instant case there is no evidence upon which a finding could be based that the trespass—if it be a trespass—is of a continuing nature or that it will be repeated.

[3] The only basis for the court's interference in an ecclesiastical controversy is that some property or civil right is involved. [4] Civil courts in this country have no ecclesiastical jurisdiction. They cannot revise or question or-

dinary acts of church discipline (*Lick Quarterly Meeting of Friends* v. *White Lick Quarterly Meeting of Friends,* 89 Ind. 136; *Ferraria* v. *Vasconcellos,* 31 Ill. 25), or properly interfere with that part of church management which concerns the spiritual welfare and discipline of the members, but only when rights of property are involved (*Prickett* v. *Wells,* 117 Mo. 502 [24 S. W. 52]; *State, Livingston Prosecutor,* v. *Trinity Church,* 45 N. J. L. 230). The jurisdiction of a civil court to adjudge any ecclesiastical matter must result as a mere incident to the determination of some property right (*Nance* v. *Busby,* 91 Tenn. 303 [15 L. R. A. 801, 18 S. W. 874]). In this state the same rule pertains. In *Wheelock* v. *First Presbyterian Church,* 119 Cal. 477 [51 Pac. 841], the court holds that the division and apportionment of the property of the church is a matter for the civil courts and that an ecclesiastical decree upon that subject is not binding upon legal tribunals, but that the decree of the presbytery dissolving the original church into two new and independent organizations is conclusive on all parties and must be so treated by the civil courts in determining the property rights of the parties.

[5] The objection that errors of law occurred during the trial is directed to the admission and rejection of certain evidence going to the question of charges against members of the church and proceedings to dismiss them from membership, and does not in any manner prejudice appellants on the controlling issue for they do not touch the transactions which occurred on May 6, 1923, nor the circumstances connected therewith. [6] Nor can these alleged errors prejudice appellants upon what they contend to be the issue, namely, the question whether Moss or Mars was director of the church on May 6, 1923, for if all evidence objected to by appellants had been excluded and all evidence sought by them to be introduced had been admitted, neither could aid appellants nor hinder respondents in establishing the withdrawal of fellowship from Mars or the validity of the election of Moss. [7] The second objection that the findings are not supported by the evidence is directed to the findings that respondent E. E. Mars was at the time in question a director of the church and that appellant J. C. Moss was not at the time in question a director of the church. There is sufficient evidence to support these findings. It is,

however, unnecessary to quote the evidence or to cite authority, as our attention is not directed to any evidence to the effect that the acts of respondents complained of and as forming the basis for the injunctive relief sought are of a continuing nature, that they will be repeated, that respondents ever threatened a repetition; nor have we found any such evidence in the record.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.