Filed 7/22/14  Pacific Southwest Dist. of the Church of the Brethren v. Church of the Brethren CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PACIFIC SOUTHWEST DISTRICT OF THE CHURCH OF THE BRETHREN,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>CHURCH OF THE BRETHREN, INC.,<br><br>    Defendant, Cross-defendant and Appellant;<br><br>CENTRAL KOREAN EVANGELICAL CHURCH et al.,<br>    Defendants, Cross-complainants and Respondents. | B247729<br><br>(Los Angeles Country Super. Ct. No. BC456826)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed on June 23, 2014, be modified as follows:

1.  In the second sentence of the first paragraph on page 11, the word "Respondents" is replaced with "Appellants."  In the third sentence of the same paragraph, the word "Appellants" is replaced with "Respondents."

2. Footnote 8 is added at the end of the first full paragraph on page 15: "In the petition for rehearing, appellants contend the issue of ostensible authority was raised for the first time at oral argument and they were not given an opportunity to brief it, as required by Government Code section 68081. The contention is not well taken. Appellants had the opportunity "to brief any issues that are fairly included within the issues actually raised." (See *People v. Alice* (2007) 41 Cal.4th 668, 677.) Although the doctrine of ostensible authority is not mentioned by name in the trial court's statement of decision, the court made specific findings that Kim was the Church of the Brethren's consultant for recruiting Korean American churches, that he acted as "an official representative" of the Church of the Brethren in advising CKEC of the district executive's position on the property issue, and that CKEC relied on his representations. In their brief, respondents cited these findings, which are consistent with the doctrine of ostensible authority, to argue that the Church of the Brethren was bound by the representations Kim and Stern made to CKEC. In the reply brief and at oral argument, appellants contended the representations were unauthorized as a matter of law and involved matters of church polity not subject to court oversight. Appellants had the opportunity to, and did in fact, present their position on the issue whether the representations were authorized and binding on the Church of the Brethren, which encompassed the issue of ostensible authority." The petition for rehearing is denied. There is no change in judgment.

---

*EPSTEIN, P. J.                WILLHITE, J.                MANELLA, J.

2

Filed 6/23/14  Pacific Southwest Dist. of the Church of the Brethren v. Church of the Brethren CA2/4 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PACIFIC SOUTHWEST DISTRICT OF THE CHURCH OF THE BRETHREN,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>CHURCH OF THE BRETHREN, INC.,<br><br>    Defendant, Cross-defendant and Appellant;<br><br>CENTRAL KOREAN EVANGELICAL CHURCH et al.,<br>    Defendants, Cross-complainants and Respondents. | B247729<br><br>(Los Angeles Country Super. Ct. No. BC456826) |

APPEAL from a judgment of the Superior Court of Los Angeles Country, Malcolm H. Mackey, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Gorman & Miller, Kenneth L. Heisz, for Plaintiff, Cross-defendant and Appellant Pacific Southwest District of the Church of the Brethren.

Law Offices of Doonan & Doonan, D. Scott Doonan, for Defendant, Cross-defendant and Appellant Church of the Brethren, Inc.

Law Offices of Steven C. Kim & Associates, Steven C. Kim and Gabriel Colorado, for Defendants, Cross-complainants and Respondents Central Korean Evangelical Church and Jang Kyun Park.

_____

Pacific Southwest District of the Church of the Brethren (PSWD) and Church of the Brethren, Inc. (COBI)[1] appeal from a judgment in favor of respondents Central Korean Evangelical Church (CKEC) and its pastor Jang Kyun Park. The judgment gave CKEC an 86-percent share and gave PSWD a 14-percent share in the proceeds from any sale of CKEC's real property, which consists of three lots in the Koreatown neighborhood of Los Angeles. Appellants argue CKEC holds the property in trust for the Church of the Brethren. We conclude that PSWD is estopped from asserting a trust over the entire property because CKEC joined the denomination on assurances by church representatives that a trust would not apply to property it owned at the time of affiliation, and at that time it already owned two of the three lots. We also conclude that PSWD may assert a trust over the after-acquired third lot. We affirm the judgment to the extent it ordered partition of the property by sale, but reverse and remand for a redetermination of each party's share in the proceeds from any sale.

**FACTUAL AND PROCEDURAL SUMMARY**

The Church of the Brethren is a protestant church with a national office in Illinois. It is divided into 23 districts. Local churches are subordinate to the district in which they are geographically located. PSWD is the district controlling local churches in California and Arizona. The district conference, a meeting of delegates from local churches, is the

_____

[1] PSWD and COBI appear in parts of the record under their earlier legal names Pacific Southwest Conference and Church of the Brethren General Board.

final authority on district policy and procedure. The district board manages the district as authorized by the district conference. The district executive is the executive officer of the board who oversees the implementation of district work.

The annual conference, composed of a standing committee and delegates from local churches, is the Church of the Brethren's highest legislative authority. Its standing committee, composed of district representatives, is the judicial body of the Church of the Brethren. COBI is one of four approved agencies of the annual conference and its principal administrative body.[2] The annual conference decides matters of polity, which are compiled in the Church of the Brethren's governing document, "Manual of Organization and Polity" (manual).

At all relevant times, the manual provided that all local church property is held in trust for the benefit of the Church of the Brethren. It also provides that all deeds of conveyances should include a restrictive covenant allowing title to vest in the district board under certain conditions and requiring consent of the district board for conveyances. Under the restrictive covenant, title vests in the district board "in trust . . . only as a means of preserving property for the purposes of the Church of the Brethren. This property has been purchased and developed by consecrated effort . . . by individuals who have been loyal to the principles of the Church of the Brethren."[3] If a local church

_____

[2] COBI is not coextensive with the ecclesiastical body or denomination, which we refer to as the Church of the Brethren. (See *Central Coast Baptist Assn. v. First Baptist Church of Las Lomas* (2007) 171 Cal.App.4th 822, 855, quoting *Wheelock v. First Presbyterian Church* (1897) 119 Cal. 477, 485 [religious corporation is "a body separate and distinct from the church proper"]; *Berry v. Society of St. Pius X* (1999) 69 Cal.App.4th 354, 372 ["a religious organization of church members or congregants coexists with the corporate entity"].)

[3] The manual's 1986 edition read that when the restrictive covenant results in vesting title in the district board as trustee, "it is understood that this action is taken only as a means of conserving for the Church of the Brethren property which has been purchased and developed by consecrated effort . . . by individuals who have been loyal to the principles" of the Church of the Brethren. That language was revised to its current version by the 1987 annual conference. The 1987 annual conference also revised the trust provision in response to *Jones v. Wolf* (1979) 443 U.S. 595 to "clearly establish a

3

"attempts by either majority or unanimous vote to withdraw from the Church of the Brethren district in which it is located . . . , any property that it may have shall be within the control of the district board and may be held for the designated purposes or sold or disposed of in such a manner as the district board, in its sole discretion, may direct."

Respondent CKEC was founded in 1979 and incorporated as an independent church in California in 1982. In 1985, respondent Park and a CKEC elder, Koo Kim, bought lots 48 and 49 for approximately $250,000, then quitclaimed the property to Park as trustee for CKEC. Between 1985 and 1987, Park visited the Church of the Brethren's national office in Illinois and had conversations with various church leaders about establishing a relationship between the two churches.

In March 1987, COBI sent CKEC the Parish Ministries Commission guidelines for receiving established congregations as member churches. The guidelines set up a three-stage process of affiliation. The congregation and the Church of the Brethren were to get acquainted during a preliminary, "pre-covenantal," stage, lasting from several months to a year. The second, "covenantal," stage, lasting from one to two years, was to be devoted to an in-depth study of the Church of the Brethren's "history, doctrine, polity, and practice." At the end of that stage, the congregation was to make a written request for recognition, "indicating formal action by the group, a proposed name, a plan for organization/charter including the property agreements and polity statements." At the third "confirmation and celebration" stage, the congregation was to be received by the district conference. The district was to "[d]evelop a trust agreement on property issues," and the district and the congregation were to sign "an agreement of trust."[4]

_____

trust relationship." The trust provision currently reads: "For the sake of uniformity and continuity in the ownership of the Church of the Brethren property, all property held by or for the use of a congregation, whether legal title is lodged in a corporation, a trustee or trustees, an unincorporated association or any other capacity, and whether the property is used in programs of the congregation or retained for the production of income, is held, in trust, nevertheless, for the use and benefit of the Church of the Brethren."

[4] The 1987 annual conference revised the manual to add a new section on "Receiving Unrelated Congregations," which reads: "When an organized congregation

At some point during the affiliation process, Kwang Suk Kim, a Church of the Brethren consultant for recruiting Korean churches, assured Park that no trust would be imposed on property CKEC owned before joining the Church of the Brethren. According to Kim, that was the position taken by Irven Stern, then-PSWD's chief executive.

Park requested that the Church of the Brethren help CKEC buy an adjoining lot, so as to convince his deacons that it would be beneficial to move from independent status to becoming part of a denomination. Between 1987 and 1989, PSWD raised $250,000 towards the purchase of lot 44, which adjoined lots 48 and 49. PSWD's board approved the purchase of this lot on condition that the transaction be governed by the manual, and that condition was to be made clear to CKEC.

In September 1987, CKEC expressed its desire to proceed to the second stage of the affiliation process. By the fall of 1989, after CKEC had participated in various denominational events and some of its members had attended annual and district conferences, Park advised PSWD that CKEC was ready to become a member congregation of the Church of the Brethren. PSWD's delegates voted to receive it as a congregation at the district conference and seated Koo Kim as a delegate. The following year, Park was ordained as a minister of the Church of the Brethren.

In 1990, a year after CKEC joined the denomination, PSWD paid $250,000 and one-half of the closing costs for the purchase of lot 44, and was listed as its sole title owner. CKEC was responsible for the remaining $70,000 on a loan carried by the seller. Also in 1990, CKEC applied to COBI for a $300,000 member church loan to build an additional sanctuary and pay off existing debts. Those included the $70,000 owed on lot 44 and $127,000 still owed on a commercial loan that had been used to pay off debt

---

seeks to affiliate with the Church of the Brethren, the district board shall initiate a series of exchange visits and conversations with the congregation to explore the theological, biblical and ecclesiastical perspectives and beliefs of each. If there proves to be potential for mutual compatibility and supportive participation, the district board shall recommend to district conference that the district and congregation enter into a year of dialogue and fellowship. During the ensuing year, the district board will review and evaluate the relationship and make recommendation to district conference for final action."

incurred during the original purchase of lots 48 and 49, and for remodeling the property. PSWD co-signed the promissory note for the COBI loan.

In 1992, PSWD transferred lot 44 to itself and CKEC, and the three lots were consolidated. Due to CKEC's financial difficulties, COBI allowed it to suspend payments on its loan in 1994. In 1996, CKEC and PSWD co-signed a promissory note for a $513,750 loan from COBI, which allowed CKEC to pay off the prior COBI loan and a commercial bank loan it had obtained in the meantime, as well as to complete construction of its church building.

According to the manual, a local church is expected to recognize a foundational covenant "to support faithfully the program of the Church of the Brethren, recognizing Annual Conference enactments . . . as having governing force in its life," and to remain a member of the Church of the Brethren. The local church is to develop its constitution and bylaws "in harmony with the Church of the Brethren and district polity." CKEC did not amend its bylaws to harmonize them with these polities. But it held itself out as a member church, using the name "Central Evangelical Church of the Brethren" on its letterhead and church building. Park renewed his ordination in 2000 and 2005, reaffirming his vows, which included a vow to be subject to the Church of the Brethren's "discipline and government."

In October 2006, Park sent a letter to then-PSWD executive Bryan Boyer, citing financial difficulties due to declining membership and asking for district approval of the church's relocation and sale of its property. In November 2006, Boyer informed Park that the district board had approved the sale on conditions that debts owed to COBI and other institutions be paid off first from the proceeds of the sale, a new property be purchased, and any remaining funds be held in trust by PSWD for CKEC. In an e-mail he sent Park in February 2007, Boyer recounted that Park had either disagreed with or misunderstood the conditions of the sale, and that Boyer and Park had agreed to have an attorney review the matter. In subsequent correspondence, Boyer and attorney Cris Klingerman, who was retained by PSWD, advised Park the Church of the Brethren's polity required that PSWD be listed as a trustee on the title of any new property to ensure

6

reversion if CKEC ceased to be "a Church of the Brethren." Park also was told that if CKEC decided to disassociate, the congregation would be allowed to keep the proceeds of the sale of its church property after paying off the COBI loan and PSWD's one-half ownership interest in lot 44.

In July 2007, Boyer and Park discussed CKEC's unwillingness to place a trust in favor of PSWD on its new property, and Boyer told Park this showed lack of trust on the congregation's part. Boyer advised CKEC it needed to provide a formal letter stating it had voted to disassociate, and the district board would respond by letter agreeing to the disassociation; the property would be appraised, so that the proceeds from the sale of lot 44 could be divided between PSWD and CKEC; and once the COBI loan was paid off and PSWD received its share of the proceeds on lot 44, the rest of the proceeds would go to the CKEC congregation. In response, Park sent CKEC's resolution to disassociate by unanimous vote.

In the subsequent appraisal, lot 44, which was used as a parking lot for the church, was valued at $930,000. That sum amounted to approximately 28 percent of the total property value of $3,320,000. Two attempted sales of the property, in 2007 and 2008, were unsuccessful. In various documents in connection with the second attempted sale, PSWD represented its interest in the entire property to be 14 percent. The district board adopted a resolution for the sale of lot 44 and PSWD's one-half interest in it, and for a proportionate share in the closing costs. PSWD submitted escrow documents to that effect.

In March 2010, David Kraus of Gorman & Miller, PSWD's new attorney, sent CKEC a letter advising that PSWD wanted to either enter into an agreement with CKEC to sell the property, or seek partition. In March 2011, PSWD filed a complaint for partition, claiming a 250/760 share, or approximately one-third of the value of the entire property.[5] In December 2011, PSWD applied ex-parte for leave to file a first amended complaint. In its application, it represented that it had changed attorneys, and that its new

_____

[5] The 250/760th share was based on PSWD's contribution of $250,000 towards the purchase of lot 44 in 1990 and the alleged $760,000 value of the property at the time.

7

attorney, Kenneth Heisz, also of Gorman & Miller, "learned that [the church's] governing documents dictated a different ecclesiastical and legal result." The first amended complaint alleged that, in October 2011, PSWD had made a formal demand that CKEC convey legal title of its property to PSWD based on the trust provisions in the manual, and that CKEC had refused to do so. The first amended complaint also alleged that PSWD had not taken formal action to approve CKEC's disaffiliation. PSWD asserted a cause of action for breach of trust under Corporations Code section 9142, and sought injunctive and declaratory relief. COBI was named as a defendant because of its interest as a lender.

CKEC demurred on the grounds that the first amended complaint was barred by the three-year statute of limitations in Probate Code section 16460 or the four-year statute of limitations in Code of Civil Procedure section 343; that it failed to state a cause of action because the property was owned by Park before CKEC joined the Church of the Brethren; that it was a sham pleading because it contradicted the allegations of the original complaint; and that PSWD lacked standing. The trial court overruled the demurrer.

CKEC then filed an answer, asserting various defenses, including the statute of limitations, laches, waiver, and estoppel. It also filed a cross-complaint for partition, quiet title, breach of contract, and rescission. The court sustained the demurrer in part with leave to amend, and CKEC filed a first amended cross-complaint, alleging the same four causes of action. The court denied PSWD's motion for summary judgment because of defects in the moving papers.

After a bench trial, the court found that no trust was created under Corporations Code section 9142 because there was no document showing that Park gave up the property in which he had an investment. In the alternative, the court found that PSWD had waived any trust by initially seeking only 14 percent of the proceeds of any sale and then requesting a partition, and that it was unfair for PSWD to take CKEC's entire property. The court ordered that the property be sold to CKEC's tenant unless PSWD procured a higher offer within 90 days. The court stated it would not "get into the

8

percentage" of the proceeds to which PSWD would be entitled, but it mentioned "the 14 percent figure" and stated that the balance would be paid to CKEC, which would also be reimbursed for expenditures to enhance the value of the property. The proceeds of the sale were to be determined after the sale.

Respondents' proposed statement of decision, which the court signed, included many additional findings, some of which went beyond or contradicted the court's previous rulings. Among those were findings that PSWD failed to exhaust its remedies under the manual; that PSWD lacked standing because it was not the beneficiary of any trust; that PSWD's complaint was barred by the statute of frauds and statute of limitations; that CKEC never agreed to be bound by the manual; that Kim, as an official representative of the Church of the Brethren, told Park that if CKEC joined the denomination, no trust would be imposed on its real property; that because of these representations, no trust agreement was developed and no restrictive covenant was included in the deed for lot 44, even though that lot was acquired after CKEC joined the Church of the Brethren; that PSWD was estopped from claiming more than a 14-percent share in CKEC's property; and that by agreeing to sell the property and divide the proceeds, PSWD had irrevocably waived the right to enforce any trust.

The statement of decision, and the ensuing judgment, provided for the sale of the property to CKEC's current tenant unless PSWD could obtain a better offer. It set PSWD's share of the proceeds at 14 percent and CKEC's at 86 percent. It provided for PSWD's proportional reimbursement of CKEC's expenses relating to taxes, construction, mortgages, interest, insurance, repairs, and maintenance of the entire property. From its share of the proceeds, CKEC was to pay PSWD 14 percent of rents collected from the tenant and to pay off the COBI loan. The parties were to share proportionally in the sale costs.

After PSWD and COBI appealed, the trial court ordered the sale of the property, directing the court clerk to sign the sale documents on PSWD's behalf if PSWD refused to sign. PSWD eventually posted an undertaking, which stayed the trial court proceedings.

9

## DISCUSSION

### I

We have been asked to resolve a dispute over ownership of church property. Secular courts may resolve such disputes so long as they do not violate the First Amendment to the United States Constitution by addressing matters of religious doctrine or by infringing on the right to free exercise of religion. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478–479.) Under the "neutral principles of law" approach, California courts should resolve church property disputes by considering "sources such as the deeds to the property in dispute, the local church's articles of incorporation, the general church's constitution, canons, and rules, and relevant statutes, including statutes specifically concerning religious property, such as Corporations Code section 9142." [Citations.] (*Id*. at p. 485.) The courts should defer "to the position of the highest ecclesiastical authority" that has decided any points of religious doctrine involved in the dispute. (*Ibid*.) Free exercise rights also require deference to the position of the general church on matters of internal church governance when "local churches have submitted themselves to the authority" of the general church. (*Id*. at pp. 486, 492.)

We apply the neutral principles of law approach and interpret the churches' governing documents de novo. (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1408–1409.) To the extent the application hinges on factual disputes, we review the record for substantial evidence favorable to the judgment and draw all reasonable inferences in favor of the prevailing party. (*Ibid*.)

In *Jones v. Wolf*, *supra*, 443 U.S. 595, the United States Supreme Court allowed churches to ensure beforehand who would retain church property in case of a dispute by modifying "the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church." (*Id.* at p. 606.) The court stated that "the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form." (*Ibid*.)

10

In 1987, the legislative body of the Church of the Brethren modified the trust provisions in the manual, its governing document, to comply with *Jones v. Wolf, supra*, 443 U.S. 595. Respondents argue that those trust provisions are dispositive of the property dispute under *Episcopal Church Cases, supra*, 45 Cal.4th 467. Appellants claim that case is distinguishable because CKEC did not agree to be bound by the manual or the trust provisions, and the trust provisions are unenforceable against it under the doctrines of waiver and estoppel.

*Episcopal Church Cases, supra*, 45 Cal.4th 467 involved a dispute over the ownership of the property of a local church that had disaffiliated from the Episcopal Church. (*Id*. at p. 475.) The local church held title to the property, but the Episcopal Church had adopted a canon providing that a local church's property "'is held in trust' for the general church and the diocese in which the local church is located." (*Id*. at p. 486.) The local church had promised to be bound by the constitution and canons of the Episcopal Church in its application to organize as a parish and in its articles of incorporation. (*Id*. at pp. 485–486.) The court held that, under *Jones v. Wolf*, the canon establishing a trust in favor of the general church strongly supported the conclusion that the property reverted to the general church when the local church disaffiliated. (*Episcopal Church Cases*, at p. 487.)

The court also held Corporations Code section 9142 compelled the conclusion that the general church owned the property. (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 488.) Subdivision (c)(2) of that section provides: "No assets of a religious corporation are or shall be deemed to be impressed with any trust, express or implied, statutory or at common law unless . . . [¶] and only to the extent that, the articles or bylaws of the corporation, or the governing instruments of a superior religious body or general church of which the corporation is a member, so expressly provide." [6] Subdivision (d) allows

---

[6] Respondents contend this provision does not apply to lots 48 and 49, which Park holds as trustee for CKEC, but they cite no authority that property held in trust for a religious corporation is not that corporation's asset. The manual creates a trust in "all

11

amendment or dissolution of trusts created by subdivision (c)(2) "by amendment from time to time to the articles, bylaws, or governing instruments creating the trusts. . . ." The court construed these statutory provisions to mean that, "under California law, a trust is created by compliance with any one of the alternatives set forth in subdivision (c)(2), and it can only be altered or dissolved by amending the creating instrument." (*Episcopal Church Cases*, at p. 489.)

Respondents argue the court's holding in *Episcopal Church Cases*, *supra*, 45 Cal.4th 467 was necessarily based on the local church's application to organize as a parish and on its articles of incorporation, which expressly declared its intent and agreement "to be part of a larger entity and to be bound by the rules and governing documents of that greater entity." (*Id.* at p. 493.) They seek to distinguish the case because, here, there is no writing memorializing CKEC's agreement to be bound by the manual, and its articles of incorporation do not mention the Church of the Brethren. The court in *Episcopal Church Cases* cited with approval the proposition that "'in a hierarchically organized church, the "general church" *can* impress a trust on a local religious corporation of which the local corporation is a "member" *if* the governing instruments of that superior religious body so provide.'" (*Id.* at p. 492.) We do not read the court's recitation of facts supporting its holding as creating a requirement that membership in a general church and agreement to be bound by its governing documents can be established only by the local church's express written agreement. (See *Episcopal Church Cases*, at p. 489, citing *Guardian Angel Polish Nat. Catholic Church of L.A., Inc. v. Grotnik* (2004) 118 Cal.App.4th 919, 929–930 [listing various acts of local church showing intent to be part of national church].)

It is undisputed that CKEC became a part of the Church of the Brethren when PSWD's district conference received it as a member congregation. After that, CKEC held itself out as "Central Evangelical Church of the Brethren," and participated in various programs and events within PSWD and the general church. It benefitted

property held by or for the use of a congregation," even when legal title is lodged in a trustee.

12

financially from the relationship by acquiring lot 44 with funds contributed by PSWD and by obtaining member church loans from COBI that allowed it to repay its commercial bank loans and complete construction of its church building. Park was ordained as a Church of the Brethren minister, and he twice reaffirmed his ordination vows, which subjected him to the Church of the Brethren's "discipline and government."

Since at least 1968, the manual has expressly provided that the annual conference is "the final authority of the Church of the Brethren in all matters of procedure, program, polity, and discipline." Its actions "are directives for the whole life of the church, and implementation is assumed to take place within a reasonable span of time," without "acts of enforcement or decree" and with channels of review when annual conference decisions are questioned. The manual directs that a local church include a covenant in its constitutions or bylaws "recognizing Annual Conference enactments of the Church of the Brethren as having governing force in its life," and agreeing to remain a member of the Church of the Brethren. By its own terms, the manual assumes this directive will be duly implemented. We see no reason why such a covenant should not be implied where, as here, the general church's governing document expressly anticipates that one will be included in the local church's governing documents.

The manual also provides that congregations "constantly need to examine and renew their covenant with the denomination and to follow the counsel of the church." In the "rare" cases of disagreement, the goal is reconciliation, not dissent. In short, the basic assumption in the manual is that member churches will agree to be bound by annual conference enactments, disagreements will be the exception rather than the rule, and they will be resolved in support of the enactments. The manual does not contemplate that a member church will refuse to be bound at all, and the fact that CKEC did not amend its bylaws after joining the Church of the Brethren does not require the conclusion that the manual is not binding on it.[7]

---

[7] At oral argument, respondents' counsel retreated from the position that CKEC was not bound by the manual at all, arguing only that CKEC did not agree to be bound by the manual's trust provisions.

13

Respondents argue CKEC did not agree to be bound by the trust provisions because Kim, who acted as liaison and interpreter, and Stern, who was the district executive at the time, expressly represented that the Church of the Brethren would not interfere with the right of established churches to control property they owned before joining it. It is unclear when these representations were made during the affiliation process, which lasted from 1985 to 1989, but in 1987, the annual conference made significant revisions to the manual: It revised its trust provisions pursuant to *Jones v. Wolf* and it adopted a provision for receiving unrelated congregations. Neither provision expressly exempted such congregations from the trust provisions, nor did the manual require their express agreement to those provisions. Appellants maintain that the representations made by Kim and Stern were unauthorized and of no legal effect because changes in polity require a two-thirds majority vote at annual conference. Appellants also rely on the provision in Corporations Code section 9142, subdivision (d) that a trust created by a general church's governing instrument can be altered or dissolved only by amending the creating instrument. (See *Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 489.)

Stern interpreted the trust provisions as not applying to property owned by established churches, an interpretation apparently supported by the stated assumption in the manual that a district may assert a trust over property "purchased and developed . . . by individuals who have been loyal to the principles of the Church of the Brethren." There is no evidence that the annual conference has sole authority to interpret the trust provisions. But even assuming that Stern lacked actual authority to in effect waive those provisions, the record contains substantial evidence that the Church of the Brethren placed Stern and Kim in a position of ostensible authority to do so.

Ostensible authority is such authority "as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317; *Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 438–439.) The doctrine of ostensible authority rests on principles of estoppel and requires "representation by the principal, justifiable reliance thereon by the third party, and change

of position or injury resulting from such reliance." (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 450; see also 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment § 96, p. 143.) Estoppel principles are "neutral principles of law" of general application, "which can be applied without 'establishing' churches to which property is awarded." (See *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969) 393 U.S. 440, 449.) Corporations Code section 9142, subdivision (b)(3) incorporates such principles in providing that a court may "rescind or enjoin the performance of a contract" only if it is equitable to do so.

In the letter that accompanied the copy of the guidelines for receiving established congregations, Park was advised that Stern and Kim would help CKEC to "relat[e] to these guidelines." The guidelines specifically required the district to "[d]evelop a trust agreement on property issues." Kim was a paid consultant for the recruitment of Korean churches, and he acted as an interpreter for Park in his meetings with Stern. According to Kim, he and Stern "made it very clear" that established Korean churches would not lose property they owned when they joined the Church of the Brethren because otherwise those churches would not have been interested in joining. Since Park was encouraged to discuss the guidelines with Kim and Stern, he was justified in relying on their representations that the trust provisions would not apply to property CKEC already owned, and PSWD is estopped from asserting a trust over lots 48 and 49.

The record does not support application of estoppel principles to lot 44 since that lot was acquired after CKEC joined the Church of the Brethren. The vast majority of the funds for the purchase of this lot was contributed by PSWD, and the purchase was approved on condition that the transaction be governed by the manual. That condition was to be made clear to CKEC. It is unclear if it was, because Park testified he did not remember. But Kim did not testify about making any representation that after-acquired property would be excluded from the trust provisions. Upon purchasing the lot, Stern advised various Church of the Brethren officials that the district was named on the deed of trust. There is no evidence that the subsequent transfer of the lot to PSWD and CKEC in joint tenancy was intended to waive the trust provisions. Nor is the congregation's

15

development of the lot or repayment of the $70,000 loan to COBI such evidence. As the court explained in *Episcopal Church Cases*, *supra*, 45 Cal.4th at pages 492–493, it is impossible to be certain whether contributions made toward the purchase and development of property while the local church was a member of the general church were made for benefit of the local or general church.

Respondents rely on the position taken by PSWD's attorneys and executives, who appear to have waived the trust between 2007 and 2011 when they claimed a share in only half of lot 44. Respondents recognize that the inconsistent position PSWD took in its original complaint does not amount to a binding judicial admission because that complaint was superseded by the first amended complaint. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 457–458 [statements in superseded pleadings may constitute evidentiary admissions or prior inconsistent statements, but party against whom they are used at trial may controvert them].) The explanation at trial was that a waiver was consistent with the Church of the Brethren's polity because the manual placed the property of a withdrawing congregation in the sole control of the district board and at its discretion. To the extent the position taken by PSWD as to lot 44 depends on an interpretation of the Church of the Brethren's governing document, it appears to be inconsistent with the requirement in the manual that the district board exercise its discretion "solely for the purpose of assuring that the property or its proceeds are not diverted from use for the Church of the Brethren."

Respondents' contention that PSWD's waiver was irrevocable or that PSWD should be estopped from revoking it is not convincing without evidence that they would suffer actual prejudice by revocation of the waiver as to lot 44. (See *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225–226 [promissory estoppel requires injury from reasonable and foreseeable reliance on promise]; *Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1035 ["waiver may ordinarily be revoked absent a showing of prejudice"].) Respondents do not address this element, and exhibit 276, which is cited in the statement of decision as evidence of their total expenditures, is not included in their appendix on appeal. The evidence adduced at trial indicates respondents have been

16

renting out the church building for 10 years. They have not been making full monthly payments on the COBI loan. There is no evidence that the rental income has been insufficient to cover the property-related expenses. Without such evidence we cannot conclude that respondents would be prejudiced by the delay in PSWD's assertion of a trust over lot 44, of which they have made full use in the meantime.

We conclude that the manual creates an enforceable trust in lot 44, but not in lots 48 and 49. The trial court was correct in ordering a partition sale, but on remand must redetermine the two churches' shares in the proceeds, and their respective rights to reimbursement for rents and expenses as to lot 44.

II

Respondents' remaining arguments are based on findings included in the statement of decision that the court did not make in the oral ruling. Respondents argue PSWD lacks standing to assert a breach of trust claim under Corporations Code section 9142 because it is not a person who may bring such a claim under subdivision (a), namely the corporation, a member, or a former member; an officer or director; and "[a] person with a reversionary, contractual, or property interest in the assets subject to such trust." The manual delegates to the districts the right to enforce the trust provisions and contemplates that a district conference will have a reversionary interest in church property, may assert title to it, and have it vested in the district board, in trust, for the district. Under the manual, PSWD clearly has an interest in church property. It is a proper plaintiff under the statute.

Respondents also argue the action is barred by the statute of limitations in Probate Code section 16460 or Code of Civil Procedure sections 338 or 343. This argument fails both factually and legally. The statement of decision, which respondents drafted and the court adopted, includes a general finding that the complaint "is barred by running of the statute of limitations. The cause of action for breach of trust and declaratory relief had accrued as of February 27, 2007 (Exh. 235)." The referenced exhibit is an e-mail from then-PSWD executive Boyer to Park, recounting the latter's disagreement with the conditions on which the district board approved the sale of the property in 2006. The

17

district board's conditions were that debts be paid off, a new property be purchased, and any remaining funds be held in trust by PSWD for CKEC. None of these conditions invoked a trust in favor of the Church of the Brethren. Thus, any disagreement about them is irrelevant to PSWD's claim in the first amended complaint.

Moreover, the statutes of limitations on which respondents rely are inapposite. The three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a) applies to actions "on liability created by statute." Such a liability '"comes into being solely by statute and . . . had no existence prior to the enactment creating it. Where liability would exist in some form irrespective of the statute, it is not '. . . a liability created by statute.'"' [Citation.]" (*Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1362.) As the court explained in *Episcopal Church Cases*, *supra*, 45 Cal.4th at page 488, subdivisions (c) and (d) of Corporations Code section 9142 were enacted in 1982, and are consistent with *Jones v. Wolf*, *supra*, 443 U.S. at page 606, which three years earlier had sanctioned the creation of a trust in a general church's governing instruments. Liability for the breach of such a trust does not arise solely by statute.

The three-year statute of limitations in Probate Code section 16460 applies only "on receipt by the beneficiary of an 'interim or final account in writing, or other written report' by the trustee . . .[,]" circumstances not present in this case. (See *Di Grazia v. Anderlini* (1994) 22 Cal.App.4th 1337, 1346.) The catch-all four-year statute of limitations in Code of Civil Procedure section 343 applies to actions "other than for the recovery of real property." (See Code Civ. Pro., § 335.) The gravamen of PSWD's cause of action under Probate Code section 16460 is the recovery of real property. (See *Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 476 [describing complaint as "alleging eight property-recovery-related causes of action"].) An action for recovery or possession of real property is subject to the five-year statute of limitations in Code of Civil Procedure sections 318 and 321. (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1095–1096.) Respondents do not address that statute of limitations.

18

## DISPOSITION

The judgment is affirmed as to lots 48 and 49 and reversed as to lot 44. The case is remanded for redetermination of PSWD's and CKEC's respective shares in the proceeds from the sale of church property. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

19